**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 25-90818 |
| 57 Concrete LLC, [1] | Chapter 11 |
| Debtor. | (Joint Administered Requested) |

**DECLARATION OF PEDRO A. CEPEDA IN SUPPORT OF**
**THE BANKRUPTCY FILINGS FOR 57 RGV MACHINERY, LLC;**
**57 FUELS, LLC; AND 57 LOGISTICS, LLC**

I, Pedro A. Cepeda, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am the indirect owner of 57 RGV Machinery, LLC ("RGV Machinery") and an owner of 57 Fuels, LLC ("Fuels") and 57 Logistics, LLC ("Logistics" together with RGV Machinery and Fuels, the "Affiliated Debtors"). RGV Machinery, Fuels and Logistics are operationally and financially intertwined with 57 Concrete, LLC ("57 Concrete" and collectively with the Affiliated Debtors, the "Debtors") which is a debtor and debtor in possession in a chapter 11 bankruptcy case pending in the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). I am actively involved in the management and oversight of the operations of the Affiliated Debtors.

2.      I submit this declaration in support of the Affiliated Debtors' chapter 11 filings and the relief requested in the Debtors' Emergency Motion for Joint Administration.

3.      Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge, my review of relevant documents, and information provided to me by other members

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 57 Concrete LLC (0886), 57 Fuels LLC (5550), 57 Logistics LLC (4104), and 57 RGV Machinery LLC (7906). The Debtors' service address is 4877 Western Road, Mission, Texas 78574.

and management of the Debtors and the Debtors' advisors. If called as a witness, I could and would testify competently to the matters set forth herein.

**CORPORATE STRUCTURE AND INTERCOMPANY RELATIONSHIPS**

4. RGV Machinery is an equipment holding and leasing company that owns a substantial portfolio of heavy equipment, including trucks, batch plants, and related assets used in the production and delivery of ready-mix concrete. RGV Machinery's primary, and effectively sole, customer is 57 Concrete. RGV Machinery generates revenue through equipment usage arrangements tied to the operational volume of 57 Concrete's business.

5. My ownership of RGV Machinery is indirect. I own 57X Group LLC which in turn owns 57 RGV LLC which in turn owns 57 RGV Machinery.

6. Fuels and Logistics are affiliated entities that support the broader operations of 57 Concrete and RGV Machinery. Fuels is involved in fuel-related operations and asset ownership, and Logistics holds and operates certain transportation and related assets. While smaller in scope than RGV Machinery, these entities are part of an integrated operating structure supporting the Debtors' concrete production and delivery business.

7. The Debtors share common ownership and management. RGV Machinery is wholly owned by me. 57 Concrete is owned by Eliud R. Cavazos and Jesus Cepeda, with me formerly holding an ownership interest. The Debtors operate in close coordination, and their businesses are functionally interdependent.

8. The Debtors' financial affairs are similarly interconnected. Intercompany transactions between the Debtors and 57 Concrete are frequent and ongoing, including equipment usage payments and other operational charges. As of the commencement of these cases, RGV

Machinery is owed a significant accounts receivable balance from 57 Concrete arising from prepetition operations.

**CAPITAL STRUCTURE AND SECURED DEBT**

9. The Debtors' capital structures are dominated by secured equipment financing. In particular, RGV Machinery's equipment portfolio is largely financed by Commercial Credit Group, Inc. ("CCG") and certain other lenders, which hold security interests in substantially all of RGV Machinery's equipment assets. The CCG debt is also guaranteed by me, Eliud and Jesus.

10. Fuels and Logistics also maintain equipment financing arrangements secured by their respective assets, although those portfolios are smaller in scope. Certain of these obligations are supported by guarantees across affiliated entities, including guarantees by 57 Concrete and, in some cases, by principals.

11. As a result of these intercompany guarantees and overlapping collateral structures, the Debtors' obligations are closely tied to the financial condition and operations of 57 Concrete.

**EVENTS LEADING TO THE COMMENCEMENT OF THESE CASES**

12. The Debtors' financial challenges arise directly from the filing of the 57 Concrete Case and the resulting disruption to intercompany cash flows. As of the 57 Concrete petition date, RGV Machinery was owed in excess of $400,000 in accounts receivable from 57 Concrete. This amount is billed through 57 Concrete X, LLC. Because that receivable is now subject to the bankruptcy process, RGV Machinery has experienced a significant near-term liquidity constraint.

13. Although the Debtors' businesses remain operationally viable, this temporary disruption in cash flow has impaired their ability to service secured debt obligations, resulting in a notice of default from CCG.

14. At the same time, the Debtors' underlying business remains fundamentally sound. The equipment owned by RGV Machinery is actively used in ongoing operations, and current utilization levels are sufficient to support ongoing debt service on a go-forward basis. The Debtors expect that, with appropriate restructuring of near-term obligations, their businesses can continue to operate profitably.

15. In addition, the Debtors are evaluating the disposition of certain non-core assets, particularly within Fuels and Logistics, where certain equipment is not essential to ongoing operations. The Debtors anticipate that proceeds from such dispositions will be applied toward valid secured obligations.

16. The Debtors commenced these chapter 11 cases to obtain the breathing room necessary to stabilize operations, address near-term liquidity constraints, restructure secured obligations, and pursue a coordinated reorganization strategy alongside the 57 Concrete Case.

## BASIS FOR JOINT ADMINISTRATION

17. The Debtors' cases are appropriate for joint administration because they involve affiliated entities with overlapping ownership, common management, and highly integrated operations. The Debtors' financial affairs are intertwined, including intercompany receivables, shared business functions, and cross-guaranteed obligations.

18. Joint administration will promote administrative efficiency and reduce costs by avoiding duplicative filings, hearings, and professional expenses. It will also facilitate a coordinated restructuring process that reflects the economic reality of the Debtors' integrated business operations.

19. Accordingly, joint administration of these chapter 11 cases is warranted and in the best interests of the Debtors' estates and their creditors.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2026

*Pedro Cepeda*
Pedro Cepeda (Mar 25, 2026 16:18:32 CDT)

Pedro A. Cepeda